DANIEL MARION v. TOWN OF PILOT MOUNTAIN AND BOARD OF COMMISSIONERS.

(Filed 17 November, 1915.)

**1. Municipal Corporations—Cities and Towns—Sidewalks—Paving—Assessments—Legislative Powers—Constitutional Law.**

It is within the power of the Legislature to confer upon an incorporated town the authority to require property owners along the streets to improve the sidewalks in front of their property, in such manner as the commissioners of the town may direct, and, on failure to do so after ten days notice by the chief of police, to cause the work to be done either with brick, stone or gravel, or other material, in the discretion of the commissioners, and assess the cost against the property owner, add the same to his taxes, and collect it as other taxes are collected.

**2. Same—Ordinances—Estoppel—Injunction.**

Where an incorporated town has passed an ordinance under statutory powers conferred on it, requiring the property owners to pave the sidewalks along their lots with certain materials, and if not done after ten days notice, the town would have the work done and assess the property and collect the amount with other taxes from the owner of the lot, and it appearing in a suit of a delinquent owner of a lot to restrain the collection of the assessment, that he had been given eighteen months notice before the town had the paving done, was present at the time thereof, making suggestions as to how it should be done, and took no step in opposition until the bringing of his suit, but theretofore promised to pay the assessment, it is *Held*, not only is the assessment a valid one under the statute and ordinance, but that the plaintiff, by his acts and conduct, is estopped to deny its validity.

**3. Injunction—Affidavit—Supreme Court—Municipal Corporations—Cities and Towns—Sidewalks—Paving.**

Where a property owner seeks to enjoin the collection of an assessment on his property for the cost of paving a sidewalk of a street along his lot, the affidavits filed therein may be examined by the Supreme Court, and in this case it is held that the order should not have been continued to the hearing upon the conflicting evidence.

**4. Municipal Corporations—Cities and Towns—Pavings—Assessments—Payment into Court—Statutes—Injunctions.**

Where an owner of a town lot resists payment of an assessment of his property for the cost of paving or laying down a sidewalk on the ground

of excessive cost, discrimination, or for other causes, the remedy of injunction is an improper one, for the owner should pay, under protest, the assessment levied and bring his action to recover it or the excess over a proper charge. Revisal, sec. 2855.

APPEAL by defendants from *Justice, J.,* at chambers in Winston, April, 1915; from SURRY.

By virtue of chapter 337, Laws 1913, Pilot Mountain was authorized to issue bonds. Section 8 of such act provides that every owner of a lot fronting or adjoining on a street in the town on which a sidewalk has been established shall improve said sidewalk in such manner as the commissioners of the town may direct, as far as the sidewalk extends along his lot, and on his failure to do so in ten days after notice by the chief of police to the owner of said lot, the commissioners may cause the same to be repaired or improved with either brick, stone, gravel, or other material, at their discretion, and the cost of said paying may be assessed upon the property of such delinquent and added to the taxes against the owner of said lot and collected in the same manner as other taxes.

After the passage of said act the board of commissioners of Pilot Mountain passed the following ordinance: "All owners of real estate in the boundaries herein set forth be and are hereby required and directed to pave their sidewalks in the material and of the width hereinafter set out in front or at the sides of their respective lots, and in such manner as the board of commissioners may direct. The territory included in this ordinance is as follows: (Here follows a detailed description of the streets on which the sidewalks on both sides shall be paved.) Among the streets named is "Main Street, on both sides from a point even with the southwest corner of Clifton & Gordon's roller mill to the intersection of Stephens Street."

The ordinance specified the width of the pavement on certain streets should be ten feet, and on the others not less than four feet wide. On 7 January, 1914, the chief of police served on the plaintiff a notice to comply with said ordinance within the time specified therein. The plaintiff failing for nearly three months to comply with this notice, the commissioners caused the sidewalk abutting the property of the plaintiff within the district prescribed in the ordinance to be graded, and proceeded to put down sidewalks thereon, on both sides of Main Street in front of plaintiff's hotel and adjoining lots and in front of his warehouse. This sidewalk was laid according to the grade established by the engineer, and it is not denied by the plaintiff that the sidewalks were laid only within the district provided for in the ordinance.

This work was done after a notice and copy of the ordinance were served on the plaintiff, 7 January, 1914. The plaintiff failed and refused to comply, and on 28 March, 1914, the commissioners let the

contract for the concrete sidewalk to George R. Martin, who was the lowest bidder, at the contract price of 94½ cents per square yard, which includes all material and labor. After the work was completed, the commissioners made a demand upon the plaintiff for payment of the cost of said work, and on his refusal his lots were assessed for the above amounts, and upon nonpayment the assessment was handed the tax collector, who after notice and nonpayment advertised the property for sale at public auction at the courthouse door in Dobson on 5 April, 1915, to satisfy the assessments, amounting in the aggregate to $218.29, of which $165.59 was for the sidewalk in front of plaintiff's hotel fronting 280 feet on Main Street, and $52.70 for the sidewalk in front of his warehouse lot.

The plaintiff obtained a temporary restraining order, and on the return day of the same, before *Judge Justice,* the restraining order was continued to the hearing, and the defendants appealed.

*S. P. Graves and W. F. Carter for plaintiff.*
*W. R. Badgett and Watson, Buxton & Watson for defendants.*

CLARK, C. J. The only question involved is whether under the amendment to the charter of the town, chapter 337, Pr. Laws 1913, enacted 4 October, 1913, and the ordinance passed in pursuance thereof, the board of commissioners were authorized, after having given due notice to the plaintiff, to pave his sidewalk on his refusal to do so, and to collect the assessment for the cost. The plaintiff alleges that the amendment to the charter is defective in that it did not require the commissioners to give him notice. They did, however, give him the very fullest and amplest notice.

There is no question of the power of the Legislature to confer such authority upon towns and cities. *Raleigh v. Peace,* 110 N. C., 32, and other cases. It is indeed necessary for the proper development of the town that there should be paved sidewalks and that the town authorities, and not each lot owner for himself, shall be judges of the localities whose traffic requires such improvements. There is no evidence here that this power has been arbitrarily or oppressively used. The property in question is on Main Street of the town and in front of the only hotel. There is no evidence that the price at which the work was done was excessive, and it was duly let to the lowest bidder. The town undertook to have the work done some three months after the plaintiff, though having due notice of the order, had neglected or refused to take any steps to pave the sidewalk himself.

In *Kinston v. Loftin,* 149 N. C., 256, *Hoke, J.,* says, quoting from *Davidson v. New Orleans,* 96 U. S., 104: "Whenever by the laws of a

State a tax assessment is imposed upon property and those laws provide for notice to the person, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law."

In this case the assessment against the plaintiff's property was made on 9 November, 1914, after written notice to the plaintiff that it would be done. He did not appear at the meeting of the commissioners nor otherwise make any objection to said assessment. In McQuillin Mun. Ordinances, sec. 318, it is said that under powers in the charter, ordinances have been sustained compelling abutting property owners on streets to construct and maintain sidewalks when necessary to the safety and convenience of pedestrians. This has been adjudged a proper exercise of the police power. The plaintiff saw the work being done in front of his hotel and warehouse lot, and not only made no effort to be heard nor took any legal steps to prevent the same, but by his conduct acquiesced therein. The assessments therefor were made and put in the hands of the collector, and he still took no action until his property was advertised for sale on 5 April, 1915.

The plaintiff has had every opportunity to be heard both before the work was begun and during its progress. He stood by and saw his property benefited at the expense of the town, and he can not now be heard to contest repayment to the town treasurer of the sum which has been paid by the other taxpayers for the benefit of his property and in discharge of the civic duty which was imposed on his property to furnish proper sidewalks.

In 2 Dillon Mun. Corporations (4 Ed.), sec. 752, it is said: "The expense of making local improvements is very generally met, in whole or in part, by local assessments authorized to be made upon property deemed to be benefited. Legislation of this character, both in respect to its justice and its constitutional validity, has been extensively discussed by the judicial tribunals of nearly every State in the Union. The courts are very generally agreed that the authority to require property specially benefited to bear the expense of local improvements is a branch of the taxing power or included within it." After citing many cases it is added: "In view of the fact that the expense of putting down a sidewalk after the grading is done may be apportioned among the abutting lot owners in proportion to their frontage, we can see nothing in the statutes which is repugnant to the Constitution, and we hold the act constitutional and valid."

The whole subject was fully discussed and the power settled in *Raleigh v. Peace,* 110 N. C., 32, where it was held that special assessments for local municipal improvements are not within the requirements of uniformity in taxation, the Court saying: "Such assessments are founded upon the principle that the land abutting upon the improvements re-

ceives a benefit over and above the property of the citizens generally, and it should be charged with the value of such peculiar benefits." And further, "The power to levy such assessments is derived solely from the Legislature, acting either directly or through its local instrumentalities, and the courts will not interfere with the exercise of the discretion vested in the Legislature as to the necessity for, or the manner of making, such assessments, unless there is a want of power or the method adopted for the assessment of the benefits is so clearly inequitable as to offend some constitutional principle." That case has been repeatedly cited with approval since. See Anno. Ed.

Arguments based upon decisions as to condemnation proceedings and the enforcement of penalties and forfeitures have no application to this proceeding, which is a local assessment for the public benefit laid upon the adjacent property owners.

The plaintiff has had the fullest opportunity of being heard. When served with notice of the order to lay the sidewalk he did not appear before the commissioners nor make any objections. When served on 7 January, 1914, with notice that unless he laid the sidewalks in front of his property the city would do so, and charge him with the costs, again he did not appear before commissioners or take any other steps to object. After three months delay, the city ordered the work to be done. He stood by complacently and saw the sidewalks laid in front of his hotel and warehouse as they were in front of the property of his neighbors, and made no objection. He was notified of the amount of such assessments and has not objected that the cost was excessive or shown that such action was arbitrary. His property was in the center of the town and the pavement was laid down in front of his hotel, which was the only one in town, and in front of his adjacent warehouse. His sidewalks must be paid for either at his expense or at the expense of the other taxpayers in the town. It is only after the lapse of eighteen months, after he was served with legal notice, and also had actual notice of the work going on, that he now objects for the first time and seeks to prevent repayment to the town treasurer of the sums spent on his sidewalks.

Indeed, it appears in the affidavits (which we can look into, this being an appeal in a proceeding for an injunction) that the plaintiff took a lively interest in the work of laying down his pavement. He pointed out where the curbing should be and made suggestions as to the grading, and at his hotel at his instance the pavement was made wider than was required by the ordinance, and at his request the width of the sidewalk in front of his warehouse was reduced from ten feet, specified in the ordinance, to five feet. Moreover, he promised to pay for the work after it was completed. Somewhat of this is denied in plaintiff's affi-

davit, but in a matter of this kind an injunction should not be granted on such conflict.

If the plaintiff had any just cause of complaint on account of the excessive cost, or for discrimination against him in selecting his sidewalks for paving, or for want of notice, or for any other cause, he should have paid the assessment into the town treasury under protest and brought his action to recover the same. Revisal, 2855, which forbids the issuance of an injunction to restrain the collection of taxes or assessments. Besides, the plaintiff is estopped to object now, having had notice to put down the sidewalk, and notice later that if he did not do so the town would lay the sidewalk and charge the cost to him (to neither of which notices he responded), and further by his acquiescence in standing by while the work was being done and making no objection either before the town authorities or otherwise, taking part in laying out the work and even promising to pay.

The restraining order was improvidently granted and must be set aside.

Reversed.

HOKE, J., concurs in result.
WALKER, J., dissents.