WINBORNE, J., concurring.
BARNHILL, J., joins in concurring opinion.
The pertinent parts of the agreed statement of facts, submitted to the court below for the determination of the questions involved in this action, are as follows:
"I. That the plaintiff is a municipal corporation, duly chartered, organized and existing under the laws of the State of North Carolina.
"II. That, pursuant to Section 6, Chapter 56, Public Laws of 1915, now C. S., 2708, the governing body of plaintiff, on May 5, 1925, passed an original resolution providing for certain street paving improvements and the manner of payment of the assessment hereinafter set forth, and said resolution included the following:
"`That the owners of the abutting property affected hereby shall pay the amount assessed against their property in cash upon completion of *Page 262 
the work and confirmation of the assessment roll, as provided in said article, or in ten equal annual installments bearing interest at the rate of 6% per annum from the date of the confirmation of the assessment roll.'
"III. That pursuant to said resolution, the plaintiff duly and lawfully levied a street paving assessment against the real estate described in paragraph 3 of the complaint, which was then and is now owned by the defendants; that said assessment was in the principal sum of $952.02, was confirmed on the 6th day of April, 1926, after due advertisement and notice of the confirmation hearing thereon, no objection was filed to said assessment and no appeal taken therefrom.
"IV. That the defendants filed no objection to the aforesaid assessment, but did not consent thereto, and did not elect, in writing, to pay the same in installments as provided by law.
"V. That upon the failure of the defendants to elect, in writing, to pay the aforesaid assessments in installments, and upon the failure of the defendants to pay said assessments in cash within thirty days after a notice of said assessment was published in accordance with C. S., 2717, the governing board of the plaintiff took no further action on said assessment, by way of resolution or ordinance, but the official or agent of plaintiff fixed with the duty of accounting for and collecting the same entered said assessment upon the assessment ledger of plaintiff as payable in ten equal annual installments, with interest at 6% per annum from date of confirmation, April 6, 1926, the first of such installments, in the amount of $95.20, to become due the first Monday in October, 1926.
. . . . . . .
"VIII. That on May 31, 1935, pursuant to the authority of Chapter 126 of the Public Laws of 1935, now C. S., 2717-b, the governing body of the City of Salisbury adopted the resolution shown by Exhibit `A' attached to the complaint, and on September 13, 1935, amended said resolution as shown by said exhibit.
"IX. That as of October 1, 1935, the aforesaid principal sum of $952.02, was unpaid, with interest amounting to $541.85, a total of $1,493.97, but pursuant to the aforesaid resolution of May 31, 1935, as amended on September 13, 1935, the official or agent of plaintiff having charge of said assessments, accounting therefor and collecting the same, caused said assessment to be charged against the defendants, and entered in the assessment ledger, in a new principal amount of $1,736.96, payable in ten equal annual installments of $173.70, the first of which was due on October 1, 1936, which was admittedly erroneous as to the amounts actually due. *Page 263 
"X. That the defendants made no objection to the aforesaid resolution or entries, but gave no consent thereto."
PLAINTIFF'S EXHIBIT "A".
"Resolution of the City Council of the City of Salisbury Relating to Extension of Time for Payment of Special Assessments and Adopted on May 31, 1935.
"BE IT RESOLVED by the City Council of the City of Salisbury, North Carolina, that all installments of Special Assessments heretofore levied by the City of Salisbury for local improvements, whether due or not due, together with all accrued interest thereon, be and they are hereby rearranged into a new series of ten equal installments the first of which extended installments shall be due and payable on the first Monday in October of the year 1935, and each of the remaining installments shall become due and payable serially on the first Monday in October in each year thereafter, so that the last of such extended installments shall be due and payable on the first Monday in October in the year 1944.
"BE IT FURTHER RESOLVED, that any installment or installments, together with accrued interest and costs, extending in accordance with the provisions of this resolution shall bear interest at the rate of 6% per annum from October 1, 1935.
"PROVIDED, that nothing in this resolution shall prevent the payment of any installment or installments or interest at any time."
"Resolution of the City Council of the City of Salisbury Amending the Foregoing Resolution and Adopted on the 13th Day of September, 1935.
"BE IT RESOLVED by the City Council of the City of Salisbury, that the resolution entitled `A Resolution Providing for the Extension of the Special Assessments,' heretofore adopted by the City Council on May 31, 1935, be and the same is hereby amended by striking out the date `1935' appearing at the end of the seventh line and inserting the date `1936' in lieu thereof.
"BE IT FURTHER RESOLVED that the aforementioned resolution be further amended by striking out the date `1944,' appearing at the end of the first paragraph therein and inserting in lieu thereof the date `1945.'"
Judgment was entered to the effect that upon the failure of the defendants to pay said assessment in cash within thirty days after notice of said assessment was published in accordance with C. S., 2717, G.S., 160-92, the governing body of the city of Salisbury had the legal right and power to make said assessment payable in ten equal annual installments with interest at the rate of 6% per annum from the date of confirmation, *Page 264 
to wit, 6 April, 1926, and the said assessment having been made so payable by the municipality and having been extended by the plaintiff in accordance with the law, the plaintiff's cause of action is not barred by the ten-year statute of limitations, and that there is owing and due on the assessment levied by the plaintiff against the property of the defendants, described in the complaint, the sum of One Thousand Four Hundred Ninety-Three and 97/100 Dollars, with interest thereon at the rate of 6% per annum from 1 October, 1935, until paid. The aforesaid amount is adjudged a lien on the specific property against which the said assessment was levied. A commissioner was appointed and directed to sell the lands described in the complaint, for the satisfaction of the judgment and the costs were taxed against the defendants.
From said judgment, the defendants appeal to the Supreme Court, assigning error.
We think the questions raised on this record for our consideration and determination may be stated as follows:
1. Where a municipality confirms a street assessment for local improvements, in accordance with the provisions of Chapter 56, Public Laws of 1915, and the property owner fails to pay the assessment in cash within the thirty-day period prescribed by G.S., 160-92 (C. S., 2717), and does not request the privilege of paying in installments, as provided therein, may the municipality, without further action, divide the assessment into installments, in accordance with the terms of the original resolution authorizing the improvements?
2. Are the resolutions of the city council of the city of Salisbury, as set forth in the agreed statement of facts herein, sufficient to extend the unpaid assessment or the installments thereof, into a new series of ten equal installments, as authorized by ch. 126, Public Laws of 1935 (now as amended G.S., 160-94; C. S., 2717 [b])?
3. Does the entry of the new series of installments, authorized by an extension resolution, which in the aggregate exceed the amount actually due, vitiate the lien of the city and relieve the property owner from the payment of the correct amount?
4. Is the original assessment barred by the ten-year statute of limitations?
On the first question the appellants contend that in the absence of a written request from the property owner to be permitted to pay the assessment in installments, the city had no authority to divide the assessment into installments, but was limited to a foreclosure proceedings for *Page 265 
the collection of the entire amount, which proceedings could have been instituted at any time within ten years after the expiration of thirty days from the confirmation of the assessment roll on 6 April, 1926, and rely upon the following authorities: Lexington v. Crosthwait, 25 Ky. L. R., 1898, 78 S.W. 1130; Lexington v. Woolfolk, 138 Ky. 392, 128 S.W. 104;Hubbell v. Hammil, 187 Iowa 1083, 175 N.W. 41; Schaefer v. Hines, 56 Ind., A. 17, 102 N.E. 838; Cleveland v. Spartanburg, 185 S.C. 373,194 S.E. 128; and Blake v. Spartanburg, 185 S.C. 398, 194 S.E. 124; 114 A.L.R., 395. An examination, however, of these authorities discloses that in each case an agreement between the city and the landowner was required, either by statute or by the ordinance authorizing the local improvements, before the city could divide the assessment into installments. There is no such requirement in our statute or in the preliminary resolution authorizing the local improvements for which the original assessment involved herein was levied. The statute requires the preliminary resolution to designate "the terms and manner of the payment." G.S., 160-83; C. S., 2708; and the resolution provided: "That the owners of the abutting property affected hereby shall pay the amount assessed against their property in cash upon completion of the work and confirmation of the assessment roll, as provided in said article (sec. 6, ch. 56, Public Laws of 1915, G.S., 160-83; C. S., 2708), or in ten equal annual installments bearing interest at the rate of 6% per annum from the date of the confirmation of the assessment roll."
The pertinent part of G.S., 160-91; C. S., 2716, is as follows: "The property owner or railroad or street railway company hereinafter mentioned shall have the option and privilege of paying for the improvements hereinbefore provided for in cash, or if they should so elect and give notice of the fact in writing to the municipality within thirty days after the notice mentioned in next succeeding section, they shall have the option and privilege of paying the assessments in not less than five nor more than ten equal annual installments as may have been determined by the governing body in the original resolution authorizing such improvement. . . . The whole assessment may be paid at the time of paying any installment by payment of the principal and all interest accrued to that date."
We think the foregoing provisions in the above statute were enacted for the benefit of the property owner, giving the owner a period of thirty days from the date notice is given as required by G.S., 190-92; C. S., 2717, in which to pay the assessment in cash, without interest; or, if he should so elect and give notice in writing to the municipality within said period of thirty days, that he desires to pay his assessment in installments, then it becomes mandatory upon the city to permit such *Page 266 
property owner to pay his assessment in installments. But, where the property owner remains silent and neither pays in cash within the thirty-day period nor signifies in writing his election to pay in installments, the option passes to the municipality to proceed to foreclose and collect the entire assessment or to collect the assessment in installments, as provided in the original resolution authorizing the improvements.
Upon the facts presented on this record, the governing body of the city of Salisbury had the same right to waive the failure of the property owner to pay the assessment in cash and to collect the assessment in installments in accordance with the terms and provisions of the resolution authorizing the improvements, that it has to waive the acceleration provision contained in the same statute in cases of default, which provision is as follows: ". . . In case of the failure or neglect of the property owner . . . to pay any installment when the same shall become due and payable, then and in that event all of the installments remaining unpaid shall at once become due and payable and such property . . . shall be sold by the municipality under the same rules, regulations, rights of redemption and savings as are now prescribed by law for the sale of land for unpaid taxes." G.S., 160-91; C. S., 2716. Our Court has held that the above acceleration provision was enacted for the benefit of the municipality and may be waived without starting the running of the statute of limitations as to unmatured installments. Farmville v. Paylor, 208 N.C. 106, 179 S.E. 459, which decision is in accord with the following decisions from other jurisdictions: Town of Cheraw v. Turnage, 184 S.C. 76, 191 S.E. 831;Mayor and Aldermen of the Town of Morristown v. Davis, 172 Tenn. 159,110 S.W.2d 337; 113 A.L.R., 1164; City of Jackson v. Willett,178 Tenn. 605, 162 S.W.2d 367; Barber Asphalt Paving Co. v. Meservey,103 Mo. 605, 162 S.W.2d 367; Barber Asphalt Paving Co. v. Meservey,103 Mo. App. 186, 77 S.W. 137; Voorhees v. North Wildwood, 75 N.J.L. 463,68 A. 175; Middleboro v. Terrell, 259 Ky. 47, 81 S.W.2d 865.
In the case of Jackson v. Willett, supra, the Supreme Court of Tennessee was considering the identical question we have under consideration, except the city of Jackson was under no obligation to grant the property owner the privilege of paying on the installment plan unless and until the property owner agreed in writing not to contest the debt. The Court held that: "The municipality had the right by virtue of this provision to refuse to grant to the taxpayer the `privilege' of the installment plan of payment, unless and until the written agreement not to contest the debt had been entered into, and upon the failure or default of the taxpayer in this regard, the city had the right to demand and collect the payment in cash. But, just as with the acceleration clause, the provision was obviously for the benefit of the city, to be exercised or waived at its option. We can find no reason for applying the rule to *Page 267 
the provision for acceleration, which does not call for its application to the provision under consideration. The principle involved is the same. In both cases the taxpayer seeks to penalize the city for its indulgence; in the one case for its failure to mature the entire debt by enforcement of the statutory acceleration provision, and in the other for its failure to enforce payment of the entire debt in cash under the pertinent statutory provision." Likewise, in the case of City of Norman v. Allen, 47 Okla. 74,147 P. 1002, it was held and approved in City of Norman, et al., v. VanCamp, et al., 87 Okla. 182, 209 P. 925, that where the ordinance provides "that the property owners may, within thirty days from the passage thereof, have the privilege of paying all assessments without interest, and if such property owners do not avail themselves of such privilege, their assessments and installments thereof shall draw interest from the date of the passage of the assessing ordinance, and the interest on the whole or entire unpaid installments and assessments then be payable annually at the time the respective installments under the assessments are payable."
The appellants further contend that the governing body of Salisbury did not authorize by way of resolution or ordinance the entry or division of the assessment involved herein, into ten equal annual installments. No action by way of resolution or ordinance is required. After the governing body of a municipality levies an assessment, it then becomes the duty of the city clerk, unless some other party is designated, to prepare from the assessment roll and deliver to the tax collector a Special Assessment Book, containing information in detail as required by G.S., 160-100; C. S., 2722, including the amount that has been assessed and the amount of such installments and the date on which the installments shall become due.
The contention that the governing body of the city of Salisbury was without authority to divide the assessment involved herein into installments, as provided in the original resolution authorizing the improvements, upon the failure of the property owner to pay in cash within the thirty-day period, or to signify his election in writing within said period hereinbefore mentioned, to pay in installments, cannot be sustained.
The appellants attack the validity of the extension resolution and the amendment thereto, on the theory that the original resolution passed by the city council of the city of Salisbury, 31 May, 1935, was null and void, since the first installment of the new series of installments fell due in less than one year from the date of its passage, whereas the statute, chapter 126, Public Laws of 1935 (now, as amended, G.S., 160-94; C. S., 2717 [b]), provided that in arranging the new series of ten equal installments, one of said installments shall fall due on the first Monday in October after the expiration of one year after the adoption of the *Page 268 
extension resolution and one of said installments on the first Monday in October of each year thereafter. The city council, on 13 September, 1935, amended the original resolution to conform to the statutory requirement in respect to the dates on which the installments would fall due.
The appellants urge that statutory requirements as to the contents of a resolution or ordinance must be strictly complied with, citing 44 C. J., sec. 2401, p. 240. It will be noted, however, that it is also stated in the same section, that "When from the language used the intention of the council is manifest, and the requirements affecting substantial rights of the persons interested in the improvements are recognizable, the resolution is sufficient." Hence, we think the resolution was defective, but not void.
It seems to be the general rule that the power to enact ordinances or to adopt resolutions necessarily implies power in the same body to amend them. 43 C. J., sec. 882, p. 561. It is stated in section 883, of the last cited authority, that "Ordinances defective because imposing excessive penalties may be amended so as to change the invalid penalty to one which is valid."State v. McDonald, 121 Minn. 207, 141 N.W. 110; Simpson v. Berkowitz, 110 N.Y. S., 485. In the last case cited, the Supreme Court of New York said: "The power is inherent in every deliberative body to amend a resolution previously adopted by it." In the case of Bacon v. City ofSavannah, 105 Ga. 62, 31 S.E. 127, the city passed an ordinance under legislative authority, but the ordinance was defective on account of an illegal apportionment of the assessment among the several abutting parcels of real estate, the Supreme Court of Georgia held it was competent for the city to amend its ordinance, after the completion of the work upon the street, so as to conform to the statute in its provisions touching a legal apportionment of the assessment.
We hold that the extension resolution, as set forth herein, as passed and amended by the city council of the city of Salisbury, was a valid exercise of the statutory authority to extend the payments for local improvements, and did extend all installments of special assessments levied by the city of Salisbury prior to 31 May, 1935, for local improvements, whether due or not due, together with accrued interest thereon into a new series of ten equal installments, the first of the extended installments to be due and payable on the first Monday in October, 1936, and the remaining installments to become due serially on the first Monday in October each year thereafter.
The appellants also challenge the validity of the lien of the plaintiff, on the ground that the new series of installments, entered on the records of the city, pursuant to the extension resolution and the amendment thereto, were for sums, which in the aggregate exceeded the amount *Page 269 
actually due at the time by the appellants. There is no merit in this challenge. The governing body of a municipality is given the power by statute to correct, cancel or remit any assessment for a local improvement, and may remit, cancel or adjust the interest or penalties on any such assessment. G.S., 160-90; C. S., 2715. See also Vester v. Nashville, 190 N.C. 265, 129 S.E. 593; Gallimore v. Thomasville, 191 N.C. 648,132 S.E. 657.
We now come to the final question for determination. Is the original assessment barred by the ten-year statute of limitations? In view of the conclusion reached on the other questions presented, it necessarily follows that this question must be answered in the negative. The new series of installments date from the first Monday in October, 1935, and the first installment did not mature until the first Monday in October, 1936, and this action was instituted 26 October, 1943. Charlotte v. Kavanaugh,221 N.C. 259, 20 S.E.2d 97; City of Raleigh v. Mechanics FarmersBank, 223 N.C. 286, 26 S.E.2d 573; Raleigh v. Public School System,223 N.C. 316, 26 S.E.2d 591.
The judgment of the court below is
Affirmed.